Judge Mills
delivered the opinion.
This case has been before this court on a former occasion. 4 Bibb, 520. On the trial again had in the court below, John Bowman, the lessor of the plaintiff, gave in evidence a grant from the commonwealth of Virginia to John Bowman, assignee of Isaac Hite and John Bowman; and the defendants gave in evidence two grants adjoining each other, in the name of James Innis, both of the same date with the plaintiff’s and with each other, and the parties admitted, that there was a partial interference between the grant given in evidence by Bowman, and the two given in evidence by the defendants; and that the tenants in possession, against whom the suit was brought, resided within *87 the said interference. The plaintiff then, to shew that fié had made the first entry, introduced the deposition of lía-vid Stutesman; who deposed, that in the month of May, 1798, he built a cabbin and settled on John Bowman’s patent, not then claiming under Bowman; but that in the fall of 1800 he took a written lease of the said premisses from Bowman, and occupied it four years peaceably. That this lease was not in the interference, and that Thomas Bartlet and William M’Guaddy were living on their farms previous to his taking said lease from Bowman. The lessor of the plaintiff next gave in evidence articles of agreement, leasing or renting, by John Bowman to Thomas Dun, the plantation whereon said Dun resided, dated on the 28th Dec. 1802, for one year, with receipts thereon endorsed for the payment of rent — ahdbe examined said Dun touching the lease, who deposed, that in 1797 he settled on the land in the lease mentioned, as did also three men near to him of the name of Stutesman by the permission of Thomas Cari seal, who claimed the land by virtue of a claim in the name of May, adverse to, and different from, the claims of both the parties in this suit, and that Carneal agreed to sell them the land. That after living on the land some time, they heard that Bowman had a claim that covered them, and that he was to comeat a certain fixed period, not recollected by the Witness, to perpetuate testimony with regard to it. That be went to see Bowman when he came, and found him at one of the corners of the tract, where Bowman then claimed the land, and he, the witness, hearing that Bowman’s claim was elder than Carneai’s, offered to buy of Bowman; but Bowman refused to sell, unless disputes were settled. That Bowman and he came to no agreement at that time; but Bowman stated that he was willing that the witness, and the other settlers under Carneal; might hold possession of the land four years rent free, but no longer. That he lived on the land six years, and until the following spring, which was 1804, and paid rent for the two last years to Bowman. The defendants then produced' to him a letter, dated January, 1802, addressed to the witness by Bowman, in which Bowman mentions that be had leased the farms of the Stutemans to Mr. Webb, and they had refused to give possession — threatened to eject them* and to come shortly and take severe measures against them, if they did not claim under a patent elder than bis, suggesting to the witness, Dun, that he must pay rent the en *88 suing year, and requested the witness to give to the three Siatetaans notice of the letter. This the witness, Dun, stated that he did. But the Statesmans refused to hold under Bowman or to deliver possession — avowed their determination to move away the following spring, which they did. That he, Dun, took the lease aforesaid of Bowman after the receipt of the letter; and never before he took the lease, considered himself Bowman’s tenant, and that he took the lease from Bowman at his own house in Mercer county, and the land in question lies in the present county of Henry. It was agreed by the parties that all these settlements of Duun and the Statesmans was not on the interference.
The defendants then recommencing the proof on their part, offered in evidence the copy of the will of James In-nis,made in Virginia in the month of March, 1798, and proved and committed to record in the general court of Virginia in the month of November, 1799; and letters testamentary were then granted by that court to Elizabeth In-nis, the executrix therein named. This copy was certified to be correct by the clerk of that court, and the seal of office was annexed. Then followed the certificate of the chief justice of the general court of Virginia, stating the clerk’s certificate to be in due form. This copy was read to the court to shew where the original was, and that it was out of the power of the party who tendered the copy. The defendants then offered sundry depositions annexed to the copy, who deposed that they had carefully compared the copy with the original will in the clerk’s office of the general court of Virginia, and that the copy was a correct copy of the original. That they knew James Innis in Virginia in his life time — that they had frequently seen him write, and verily believed that the original will and signature thereof was in the hand writing of the said James Innis. There were two subscribing witnesses to the will, one of whom was proved to be dead, and that (be other still lived and resided in the state of Virginia. The plaintiff’s counsel admitted notice of the time and place of taking the depositions so offeredwith the will, but objected to the copy of the will going in evidence to the jury on this proof. The court below admitted the will, and the plaintiff excepted. This forms the first question, presented for the decision of this court, by the assignment of error.
Wills, devising lands, operate as conveyances. In Eng *89 land the proof of them, and the granting of letters testamentary, was confided to the consistorial court exclusively. But the jurisdiction of this court did not extend to any thing but the personalty. The probate certified by that court had no effect as to really, nor could the party, who claimed title to real estate, use the probat? as evidence on the bishop’s certificate only, without further proof. In such case the party produced the will, and on every trial, before he could use it, he introduced testimony to prove its execution as a deed not enrolled, as well as to prove the capacity and sanity of the testator to make the will at the time he did it, and that he published and declared it his will as the law required. Then, and not till then, could he use the will on the tria!, and then it was sufficient to shew the title which it vested in him. Hence the numerous rules relative to the proof of wills on trials at law touching the realty,which are to be found in their treatises on ejectments, and no case has presented itself within the recollection of this court, where the party in that country produced the will or certified copy and read it on the credence attached to it by the certificate of probate endorsed thereon. Such is believed to be the practice to thÍ3 day in some of the American states. Virginia, however, at an early day, saw the inconvenience of the practice, as well as the evils which might result from leaving such important title papers as wills without registration, and she, by law, constituted courts of probate, with powers to take the proof, not only as to personal, but real estate. There the will passed an ordeal, which proved it, not only against the parties concerned, but against the whole world, unless it was contested by an issue in chancery made up in a limited number of years. The officer kept the original, and copies certified have ever since been admitted in evidence in all courts on trials at law’, merely on the force and effect of the certificate of probate. This provision has been adopted in the code of Kentucky, and, with it, the universal practice of admitting the copies in evidence in courts of law and equity, without further proof, w'hen they appeared by the certificate to have been regularly proved before the proper tribunal. But it has never been decided, either in Virginia er this state, within the knowledge of this court, that such proof and registration wrns essential to the validity of the will — that it would pass no title without it, or that it could be proved by bo other evidence to authorise it to be used on a trial. Such *90 u-e conceive cannot be considered the effect of the law direcliog the mode of proof and registration. They can still be produced and proved by other proof, according to the ancient doctrine, and then may pass a valid title. Such was the proof attempted on the present occasion, and a-gainsl it an objection is made. As Virginia had, previous separation, laws in force, of which we are bound to take judicial notice, constituting their general court, a court probate, with the aforesaid powers — and as this will was Prove<^ *n that state, it may be a question of some moment, whether we ought not still to continue to take judi-notice of these laws as now existing in Virginia, unless party objecting should shew their repeal. And from toe’l*)emmight be argued that the probate of this will in certified according to the act of congress, ought to have in this state full faith and credit given to it, under constitution of theUnited States, as a judicial proceeding. Or as this court has expounded that clause of the constitution, in the case of Rogers vs. Coleman, &c. Hard. 413, that such proceedings should have the same credit here, which was attached to them in the state from whence it came, otight we not to admit the will on the credit of their probate, as it would be admitted in the courts of that slate? On this question, however, we would not be understood as giving any opinion. But we shall proceed to consider whether the defendants in this case, as the original was shewn to be in the custody of the law in Virginia, was entitled to use the sworn copy, on the proof adduced. One of the subscribing witnesses is dead, and the other resides in Virginia, where he might, or might not, be had, as it might chance to happen, at the office, to inspect the original will, by giving bis deposition. Suffice it to say, that the laws of this state furnished the party with no coercive means to bring him to the office there, and extract the proof from him. In such case, then, the law excuses his non-production, and allows the party to resort to evidence of another grade, as he has done, successfully, we conceive, in this instance. For we have no hesitation in saying that such proof as he has made would, in the absence of the subscribing witnesses, at all events, entitle it to record io this state, and, of course, it ought to be read in evidence, and the inferior court did right in admitting it. With this accords Hood vs. Mathers at the present term of this court.
A copy of a will proved before and recorded in a court of competent jurisdiction, in a sister state, and certified by the clerk and presiding ©fuserofthat court, according to the stat. of congress and again proved by persons who compared the copy with the on ■ ginal, detained in the custody of the law of sac) i sister state, may be u ed m our cou rts as an unrecorded deed, and passes the title of lands devised therein.
sbe is not neces-⅜ — ,‘f6 subscribí iiig residing m essential the biiity of a ⅜ evidence^ *
The next document which the defendants offered in evi - *91 denee, was a letter of attorney from Elizabeth Innis, the executrix in the aforesaid will, to Harry Innis of Kentucky, dated the ninth of May, 1800, attested by three subscribing witnesses, and proved by the three witnesses in the month of August next succeeding, before the mayor of the city of Williamsburg, and state of Virginia, and certified By him to be so proved, under bis hand, and the seal of the corporation of the city. On the first of July, 1801, it was produced to the clerk of this court, and recorded by him on the faith of the mayor’s certificate. The defendants then proved the death of one of the witnesses thereto, and proved his-band writing in the attestation of the paper:— That one of the other witnesses was living in Virginia, and that there was a man of the same name with the third, residing there, in the neighborhood of Mrs. Innis’, but whe-tber he was certainly the subscribing witness, does not appear. Having made this proof, the court allowed the letter of attorney to be read in evidence to the jury, although the plaintiff objected; and an exception was taken to this opia-ión, which presents the next question for our decision. It is not contended that this letter of attorney was entitled to go in evidence as a recorded deed; for no statute authorised it to be recorded by 'he clerk of this court, on such authentication from another state. The question then is, ought it to have been admitted on the proof offered? This court itas air ady decided in more cases than one, that the ab-secce of a subscribing witness from the state, or rather his residing abroad, aulborised the admission of inferior evi-denee. Clarke vs. Bartlett, 4 Bibb, 201; Sentney, &c. vs. Overton, 4 Bibb, 445. These cases shew that the party is not bound to resort to the too frequently ineffectual mode of taking depositions. Had the party here shewn satisfactorily that the two surviving witnesses were out of the state? We conceive he had. One of them is proved expressly to reside in Virginia, and a person also heing, proved to reside there of his name, ought to be taken as the same, until the contrary appeared. Besides, the person making the power was-shewn to reside there, and the authentication attempted to be given to the paper was made there, and the whole transaction wears the features of an attempt, on the part of the executrix there, to authorise an agent to do her business here, without her presence. From these circumstances the residence of the witnesses might be presumed to be theje, independent of other proof, as was done by this court *92 the case of Gibbs vs. Cook, 4 Bibb, 535. The cases c‘tec* ou this point decide the question, and shews that the circuit court decided it correctly.
atj^ *®tter °* before, arid certified by, 0f a sister state and re-of the couri 0⅜- a‘p. peals,derives "? from,&sthere is no law an-thm-ising- the record in that court of such papers on buf'on'proT-;ng the súb-scribing wit-d^d^cr'out 0f t¡¡e ‘stilte the party ter^may prove the hand wri-of the leí ter as an unrecorded deed,
A clerk may made by^ri agent without enquiring ty ⅛⅛ gency.
The tor °boldhia' the’ his principal tion' land may £ rightfully enter thereon, ⅛ the bom'" to be genuine establishes a the^atent1**1 rotwithstan6-’ dingthebond may have abortive attempt at di-
The defendants then offered in evidence a deed from Elizabeth Innis to Charles Lynch, by Henry Innis, her attorney in fact, dated the first of July, 1801; andón the 2lst f]av 0y same month, acknowledged by the agent before clerk of this court, and admitted to record. They also proved the handwriting of Harry Innis, the agent, in signature to the deed. To the reading this paper the pla'nt¡ff’s counsel objected, and his objection was overruled and the paper admitted, and the plaintiff excepted. As the objection of the plaintiff shews r.ot its grounds or reasons, the answer may be equally laconic. The deed was properly admitted, not only on the proof of the hand writing, but as an enrolled deed. The clerk of this court had ample authority by law to receive the acknowledgement and admit it to record, w ithout enquiring into, or deciding on, the validity of the agency.
The defendants then offered evidence that Charles Lynch, asserting claim to the locator’s moiety of James Innis’ patents, in the summer 1799, shewed a bond, purporting to be James Innis’ bond, and caused a division of his interest to made by commissioners appointed by the county court, 'n vv^'c^ division the land in contest was assigned to him; that one the commissioners died, before they made their report of the division, which prevented the report being made. To this evidence the plaintiff objected; hut it was overruled, and an exception taken. When this case was presented to this court on a former occasion, it was then decided that the tenants or defendants could not Prevent a recovery against them by shewing a grant of the same date, covering the land, and that they must shew a privity of title with the grant so relied upon by them, oth-env‘se a mere intruder might prevent either patentee from recovering the land, by shewing against either alternately the opposing grant. It might seem, at first blush, that, un-¿01. this decision, this evidence only shewed an intrusion on part of Lynch on Innis’s patent. But when this eri-dence is taken in connection with other evidence in the cause, which will now be noticed, it was evidently proper, was competent for the defendants, when they offered this evidence, to explain to that court the object of it — first, to shew the entry of Lynch, under claim of right, and then to *93 shew that that entry, was rightful, by proving that the locator’s bond, shewn by Lynch, was genuine; and, in such case, the evidence was admissable, and it was immaterial whether the right was shewn first and the ent ry afterwards, or the entry first and the right afterwards adduced.. Indeed it does not appear certainly, by this record, which was first offered. The evidence alluded to, conducing to shew that Lynch’s entry was rightful, is that of Harry In-nis, the brother of James and agent of Elizabeth, who had deposed on a former trial of this cause, and whose evidence, he being dead, at this triaj was proved by other witnesses. It appears that he sold the whole land to Lynch, under his power of attorney from Elizabeth Innis, and when he made the aforesaid conveyance to Lynch in 1801, he deposed, that he took in his brother’s, James Innis’s bond, then held by Lynch, and that it had been given by his brother to May and co. for the locator’s part of the land. This evidence, conduced to shew that this bond was genuine, and a jury might infer, that by virtue of this same bond from James Innis, Lynch attempted his division in 1799, under which Barllet entered in the fall, 1800; which fact was further shewn by other evidence Taking this evidence, then, as objected to, together with other evidence conducing to shew Lynch’s authority from the patentee, Innis, we coacerve it was properly admitted.
Exceptions cause,should be disregarded'
The defendants then offered in evidence a letter of attorney from Charles Lynch, dated 10th November, 180ñ, in which be authorises Humphreys to collect ail debts due to him in Henry county, and “to convey any lands he might be bound for. ” Also a second letter of attorney from Lynch to Humphreys, dated the 14th December, 1812, in which he gives him ample and unlimited authority to sell and convey all his lands in Henry county. In this power he recites, that he had given the former letter of attorney, and that it was found upon examination to be incomplete, and that Humphreys had sold and conveyed, under it, divers quantities of land in Henrj county, and received payments; and then he proceeds to ratify all the conveyances, and every act done by Humphreys under the former instrument. These letters of attorney were admitted without objection, The defendants then gave in evidence sundry "conveyances of the land in controversy, made either directly to them, or to others first and then to them by mesne conveyances, executed by Humphreys as the attorney in fact of Lynch, ex *94 cept one, wbieh was executed by Lynch himself. There were no subscribing witnesses thereto, arid Humphreys, the agent, proved I heir execution by him on the trial. The record then proceeds to state, that “to reading of all and each of which, the letters of attorney excepted, the plaintiff objected, but bis objections were overruled.” Objections to evidence of this indefinite character must be frequently disregarded, unless the ground of them is apparent. All the answer, therefore, which we shall give to the present one, is, that we do not perceive what the objection was Each deed is acknowledged before the clerk of the county court where the land lies, and admitted to record, and those which were executed by Humphreys, vVere, out of abundant, and we think unnecessary caution, proved by him. They were therefore properly admitted.
The first enh- of an cquiiy hold er on j part of an interference, f recognized by thr patentee, exit ir i* to thr whole interference..
The defendants then gave in evidence a mortgage from Charles Lynch to Elizabeth Innis, dated in 1801, which, it appeared, Harry Innis, the agent, had taken to secure the purchase money due for the land from Lynch — and they proved its execution, and that Elizabeth Innis was dead, and tbat'Mrs. Randolph, wife of Peyton Randolph, vvaa the sole surviving child and heir of James and Elizabeth Innis. They then gave in evidence a copy of the record from the circuit court of the United States for the district of Kentucky, of a suit in chancery, wherein Peyton Randolph and wife were complainants against Lynch and the present tenants on the land as defendants, brought to foreclose the aforesaid mortgage; and in the record was the decree of foreclosure, and the sale, and purchase by the defendants, and a deed executed to them by commissioners as appointed by order of that court. To the reading of these documents the plaintiff objected, and his objections were overruled. To this assignment of error the same, or a similar response, might be given as was given to the last; for the bill of exceptions is equally indefinite. It is true that this decree of foreclosure, and sale and conveyance, made in pursuance thereof, were after the commencement of this suit, and this is the only apparent objection. It ought not, however, to be forgotten, that it was contended on the part of the plaintiff in this action, that Bowman had first entered upon his grant, claiming the whole, and therefore he ought to be adjudged to have the first right of entry, as a-gahist the adverse patents of the same date. This was contested, in point of fact, on the part of the defendants, *95 who contended that Bowman’s entry was without the interference, and not intended to extend within it; and that they, by the licence of Innis, or rather of Lynch, who first held an equitable undivided interest, and then claimed the legal estate of the whole from Elizabeth Innis, through the instrumentality of Harry Innis, had acquired the first entry in point of time. This was matter of fact for the jury to decide; and any thing in this controversy which tended to shew the recognition of Innis or his representatives, of the entry of Lynch, or the defendants under him previous to any entry of Bowman extending to the interference, was proper evidence in such a controversy. Such we conceive the act of Randolph and wife to be in bringing their suit to coerce the payment of the purchase money due on the sale of Elizabeth Inuis. And although that act had cot come to maturity, by its consummation, before this suit was brought; yet we conceive the subsequent decree .and sale was proper, to shew the completion of their act of confirmation previously commenced. According to this view of the case, if in no other, we conceive the record was properly admitted For the purpose of contesting this fact, of the previous entry of Bowman, the defendants gave in evidence a subsequent deposition of the same David Stutesman, whose first deposition the plaintiff had used, in which last deposition he states, that upon further reflection he conceives it was in the fall of 1801, instead of 1800, when he first took his lease from Bowman, and that the lease was lost, but it only extended to the cleared land on the farm on which he lived, and which he settled under Thomas Carnea!, to whom he believed it to belong.
The defendants having completed this chain of evidence, with regard to the grants of Innis, and the entry under them, introduced another chain of circumstaocewionducing to shew, that Johu Bowman’s patent was, in fact, the youngest, by attempting to shew that John Bowman was dead previous to the emanation of his patent, and thus laying the ground work of contending that his patent could take no effect in John Bowman, the present heir at law, by virtue of the statute of Kentucky, which gives validity to such grants in the hands of heirs and devisees. For this purpose they read a land office treasury warrant, dated the 15th day of October, 1719, issued to Isaac Hite, John Bowman, Abraham Bowman, and Joseph Bowman, of the same quantity and number of that recited in the plaintiff’s patent; *96 g|s0 ijls copy 0f a surrey of tbe same quantity on the same warrant, made in tbe names of Isaac Hile, John Bowman ' , tti and company, together with an assignment on the back thereof, certified by the register, and dated on the 3d May, {784, executed by Isaac Hite and Abraham Bowman to John Bowman. This plat and certificate, together with the warrant, appeared to correspond, in all respects, with the patent of the plaintiff, and to be tbe same on which the patent issued, except that the patent disagreed with the assignment, by stating John Bowman, tbe patentee, to be the “assignee of Issac Hite and John Bowman,” instead of JJbrahnm. To reading of these papers the plaintiff objected, and was overruled, and be excepted in his usual indefinite style, barely alledging that ht objected. We see nothing in the objection. The papers appear to be authenticated by the proper officer; and although they could not be used to prove or disprove title, yet they were proper to lay a foundation for shewing, in conjunction with the evidence which follows, that Bowman, the patentee, was John Bowman the deceased father, and not John Bowman the son, and present lessor of the plaintiff. The defendants then proceeded to introduce a witness, who deposed, that in the fall 1783, he was at Bowman’s station in Lincoln county, mi bis way to Virginia, and that col. John Bowman, who lived at said station, was then in a low state of health, afflicted by a severe disease; and that it was commonly said and understood that col. Bowman was the partner of Isaac Hite and company, in land business in this country. That cn bis, the witness’s, return to this country, in May or June 1785, he frequented Danville, the place where the court was holden in said county of Lincoln. Col. John Bowman was then said to be dead, and be, tbe witness, saw him no more in the country. John Bowman, the present lessor of. the plaintiff, was proved to be the son and sole heir of col. John Bowman, and to be now between forty-five and fifty years of age. The grant in question issued the second of December, 1785.
This contains, substantially, the evidence in the cause on both sides, except such minor parts as have been omitted and may be hereafter referred to
Tbe counsel for the plaintiff moved the court then to give sundry instructions to the jury; some of which were given and some refused, which will now be noticed. The first one asked was — that if John Bowman, tbe lessor of the *97 plaintiff bad made an entry witbin his patent, claiming the whole, before aDy entry by James Innis, or those claiming under him, and had, by himself or tenants, continued the possession ever since, he was by such entry and possession presently possessed to the extent of his patent, and that the subsequent entry of the defendants claiming under Lynch, was tortioüs — that the remedy by ejectment was proper, and the issue on the part of the plaintiff sustained, and they should find for the plaintiff. This instruction was given, predicated on the supposition that the patents of both parties had taken effect at the same date, except the latter clauses, to wit, that the issue on the part of the plaintiff was sustained, and they should find for the plaintiff. This was refused, and the plaintiff excepted YVe entirely concur with the court below in refusing the latter clauses of this instruction, which is the only part of which the plaintiff has a right to complain. Although Bowman’s entry, to the extent of his grant, should be allowed to be prior to that of the entry on the grants of the defendants, it did not then necessarily follow that his grant was the eldest, and that the issue on his part was sustained, and they ought to find for him. It is evident that if the court had giveu this instruction, in the unqualified terms in which it was asked, it would have excluded from the jury the consideration of another important defence relied on by the defendants, to wit, that the grant of the plaintiff issued to a dead man, and was inoperative till it was revived in the hands of his representatives-
aA estate, remainder o- ¿¡„ pfse 0f ,[fe particular es-!ate by the (tyofansgeni —andthougn the Power der, it ⅛ val id as to what nf
, The next instruction asked, was, that the letter of attorney from Mrs. Innis to Harry Innis was void in law, and that the deed executed by Harry Innis conveyed no title, and was void also. This instruction was refused, and an instruction given to this effect, in lieu of it — that although the letter of attorney did not authorise Harry Innis to-convey the right of the devisees in remainder, yet it did autho rise him to convey her interest, and was therefore not void as to her title. The testator, in his will, had devised “ah his estile, both real and personal, to his wife, Elizabeth Innis, during her widowhood, and after her death or marriage it was to be equally divided between his two children then living. He then directed any of his lands, either in Vir giniaor this state, to be sold, at the discretion of his wife, and the money to be applied to the maintenance and edu-eation of herself and children. On the refusal of the oth *98 er executors, named to undertake the burthen of the execution of the will, she likewise renounced the executorial character assigned her hy the will, and took out letters of administration with the will annexed. By the recital in her letter of attorney, she seems to intend to execute the authority vested in her by the will But she adds clauses authorising her agent to execute conveyances with clauses of warranty sufficient to bar the right, title, future claim and interest of herself and all persons claiming under her, or her heirs only, together with some other expressions res* peeling his authority. We have not thought it necessary to decide, whether this letter of attorney authorised the sale Of the reversionary interest. For we are confident it was valid to pass the estate of the widow, which was an estate for life, unless sooner determined by her marriage. And this is all the effect given to it in the court below, which could affect the plaintiff. For it contains clauses expressly authorising him to convey her interest, and if the defendants obtained this, it authorised their occupancy, which they were attempting to defend.
A reqast for ins trac-lions on a supposed siaie of that, when evidence conducing to shew the contrary U before the jury, should never be indulged; all should be left with the jury.
The next instruction asked and refused by the court, was, that the defendants had shewn no privity and connection between the patents of Innis and their possession. This was a question requiring the opinion of the court, with regard to some of the facts in the cause, and ought not ta have been given, if there was any evidence conducing to establish these facts. The court is the proper judge of what evidence conduces to establish a fact, and when such is given, the court ought not to express an opinion on its sufficiency, but leave its weight with the jury, except in those cases where the evidence is admitted with all its force, as is sometimes done by a demurrer to evidence, and proceedings of a like nature. In this case it appeared that Lynch claimed the land in 1199. That the tenants entered, claiming under him; and evidence was adduced tending to shew that he held a genuine bond on James Innis, the patentee, for part of the land. The possession of tba defendant, Lynch, had been confirmed by different acts, such as the making of deeds, and ratifying and supplying the defects of a former letter of attorney; and James Tnnis’s representatives, so far from treating them as intruders, went on to coerce the purchase of Lynch, by foreclosing thS mortgage. Under such circumstances, the court below would not have been justifiable in saying that this evidence *99 proved nothing, and that no presumption arose from it fa-vorabie to an authorised occupancy on the part of the tenants.
thetouvl of the pur-, c!,asei', the fe‘"'e 0T t,Mj notbeevi.ien-ced by deed. i,rna)S e'
if apaten-tee enters up- ?" Qar.t 01 f;ie trovei sy.u ith an intention si,a]¡ c’an. sMered as a possession of ters up >n a defillil-e part, twnh a view t° possess such par; on-4phisposses-part.
The court below was next asked to say, that no privity between the possession of the defendants severally and respectively, and the grants to innis, could arise in law, before the dates of the defendants’ respective deeds. This was refused, and we conceive rightfully. For it cannot seriously contended, that leave to enter and occupy must be given by deed, and that the possession of the defendants could not be rightful until they obtained their deeds. The tacts and circumstances, above detailed, warranted a presumption that they had entered with leave.
The next decision required from the court below was, that if Bowman had the actual possession of any part the land in his patent, before the defendants took their deed from Lynch, that then Bowman in law had she^n the right to the possession of the lands respectively held by the defendants. This was refused. The conclusion attempted to be drawn by the plaintiff, will appear, by what has been said, a perfect non sequitur from his premises. It could not follow, that Bowman’s possession, in any part of his tract, could give him a right to Ibe possession in another part, held under an adverse title of equal grade with his own, because the possessor had no conveyance from the holder of the legal estate, provided he had the consent of the title holder to his possession. The court below, in answer to fhis motion,.gave instructions of which the plaintiff cannot complain, to wit, that if Bowman, either by himself or tenuiii, entered upon and possessed any part of his patent in the name of the whole, and with intent to possess the whole, it should be considered as a possession of the whole. On the contrary, that an entry on a definite part, with a view to possess such part only, should be considered as a possession of that part alone, and this would be especially true with regard to a tenant settled there. The correctness of this decision is r.ot complained of by the other side, nor are we disposed to impugn it. But it gave the plaintiff the full benefit of all that the law could give him upon the circumstances of this case. . .
. . the next instruction desired, was, that Lynch had no authoirity to sell out or mhke contracts for the salé of In-nis’s grant or grants . This was not given. If this bad been given, it would have precluded the jury from consider *100 ing that part of the evidence which conduced to shew thait he held a genuine bond from Innis, and would have been virtually deciding that no bond was proved to exist, and determining the fact which the jury ought to decide. The court as a substitute, informed the jury, that the sales made by Lynch, prior to the completion of his title, could not vest a legal title to every purpose, but that he might sell whatever right or interest he had. This placed the matter in a proper light, and left to the jury the determination of the fact, whether he had au equity by bond on James Innis.
An elder patent before they ar 1792 yielded to one oi a latter date, provid ed the first patentee was dead at the time it issued.
The next instruction asked, is the same in substance with the first and last of the preceding ones, or at least are included in, and answered by the decision of them, and therefore need not be further noticed. The court below virtually gave it the same answer, except the latter clauses of the instruction given by that court, to the following effect — that if the jury believed that Lynch bad become equitably entitled to a bond for the conveyance of a part from James Innis, and that such bond was genuine, it would create such a connection between Innis and Lynch, as would authorise Lynch to enter, before the date of his deed from Harry Innis, and that such entry would enure to the perlection of Innis’s title. This instruction left with the jury the determination of the fact of the existence of a bond from Innis to Lynch, and explained to them, in language which we cordially approve, the legal effect of that fact with regard to Bowman’s patent.
The court below then, at the instance of the defendants’ counsel, gave the following instructions to the jury, to wit: That if they believed that John Bowman, named in, and intended as, the grantee in the patent, was dead, when the patent issued, nothing passed by it until the passage of the act of 1792 which transferred titles in such Cases to the heirs of such decedents, and that consequently Fnnis’s patent was elder, and, the verdict must be for the defendants. Secondly — That if the defendants entered on the land in question, claiming under the title of James Innis, and have so held, with the assent of Elizabeth Innis, in her life time, and of Peyton Randolph aed wife since her death, they could protect their possession by the title granted to James Innis, whether the title papers produced in evidence conveyed to them a legal title or not; further remarking, that acts done by those claiming under a title, ought to enure to the perfection of that title, when opposed to the claim of *101 grangers, although their title was but equitable. Thirdly —That from the face of the warrant, survey, assignment and grant, the presumption was that they were all intended for the same person. But. if they found from the evidence that John Bowman, the father, was dead when the assignment was made, they were at liberty to presume that the assignment and grant were to the son. These instructions Were excepted toon the part of the plaintiffs, arid are presented for our decision.
A grant is* sued to a dead irán be-foiethe veal* 179% passed in. tide lo his representatives: an in-, termedute grr.nl, crone of equal date, should be vs-teemed the eldest.
The first branch of these instructions is fully supported by the cases of Lewis vs. Speed, 1 Marsh. 199, and Colston vs. M’Vav, 1 Marsh. 250. These cases have been followed by subsequent decisions, and by them the law may be considered as settled, that by shewing an outstanding elder grant in a stranger, from which the right of entry is not tolled, a defendant in ejectment may protect himself, altho’ he shews no privity between his possession and that grant. And further, that a grant which issued in the name of a dead man, passed no title to his representatives, until the passage of the act of 1792, referred to by the court below; and that an intermediate and junior grant ought to be esteemed the eldest, and of course ought one of equal date. If the defendants then, in this case, shewed to the satisfaction of the jury, that the grant had so issued to John Bowman, it followed that it was posleiior in date to Tunis’s grant, and of course they ought to find tor the defendants, although there was no privity between them and the grants of Iunis. As to the second branch of the instructions, it was decided that it was necessary for the defendants to shew privity between themselves and the grants of Innis, before they could protect themselves under his grants of equal dale With that of the plaintiff But it was not intended then to say, that they must shew a legal estate in the grant so set up by them. To comply with that decision, title is not necessary. It was sufficient for the defendants to shew, that their possession was acquired under that adverse grant, and that they had the permission of those, who held an interest in it, either in law or equity, to enter and oecupy under it. '' This they attempted to do; and the weight of the evidence, in supporting that attempt, was left with the jury; and as to the effect of the facts, when found, the court below, in this respect, properly instructed them. On the third branch of the instructions, we conceive that no unprejudiced mind can look over the warrant, survey and *102 grant, and not presume them to be issued to the same person. They agree ¡d amount of acres and in number, a measure adopted by the officers of government as a distinguishing characteristic to identify one warrant from another, and to determine upon the individuality of the same warrant, and shew it satisfied, by the survey añd grant. It is true the patent varies by calling the patentee assignee of John Bowman, instead of assignee of Abraham. But when it is recollected that the register, (as urged at the bar) was directed by tbe law, then in force, to recite on the face of the grant tbe material circumstances which caused its emanation to a person different from the original owner, as heir, assignee or devisee, (see 1 Litt. 416,) it is far more probable, that he mistook the came of John for Abram, than that he neglected his duty in naming John Bowman, the paten-tee, as heir in the grant, unless the assignment was made subsequent to the death of John Bowman the elder; which case the court below guarded against, by allowing the jury in that event to presume the grant to the son. So far tbe instruction was in favor of the plaintiff, and we conceive that part which was given against him, was fully warranted by the documents on which the instructions were predicated.
After these instructions were given in behalf of the defendants, the plaintiff moved the court to give tbe following instructions: First — Tbat if there were two John Bow-mans, one of whom died before the date of the grant, and the other alive, the law presumed it a grant to the living and not to the dead. Secondly — That if the grant given in evidence by the plaintiff was intended for the present John Bowman, it was a good grant to him, and not a grant to the dead John Bowman. Thirdly — That the defendants bad laid no foundation for finding that their entry or possession was with the knowledge or permission of Mrs. In-nis, and that the defendants had given no evidence conducing to prove her knowledge of, or assent to, such entry or possession The first of these instructions were refused, and we conceive rightly, ft was nothing more than asking the court to instruct the jury, that the law at once assigned the grant to the living person by its operation, regardless of the warrant, assignment and survey, which the court had just decided, raised a presumption that the grant was intended for tbe decedent, and of the law which required the register to recite the nature of transfer or descent in the *103 grant. By giving it, tbe former determination of tbe court, which we have approved, would have been reversed. Be sides, it attempted totally to exclude from the consideration of tbe jury, the important circumstance appearing in proof, that John Bowman the son could not have been more than two years old at the emanation of the warrant, and not exceeding sixteen at the date of the patent The second instruction was refused, not because it was not good law, and a perfectly self-evident proposition, but because the plaintiff had not laid a foundation in evidence, for indulging the in-tendment, that tbe grant issued to the son and heir. That court had rightly decided previously, that the circumstances and documents raised the presumption that the grant issued to the father and not the son. The plaintiff had done nothing to repel this presumption, or adduced the slightest proof conducing to shew that the grant was intended for the son. The court therefore did right in refusing the instruction. For we hold it well settled, that a court ought not to be called upon to instruct a jury as to the lavv arising upon any given state of facts, unless there be some evidence exhibited conducing to establish these facts. To do so would be embarrassing the cause in the minds of the jury, by submitting to them abstract propositions, and supposed cases, in the science of law, instead of the facts in the cause, which is peculiarly their province. And every court would do right in refusing to deliver an assent to any position of law, however sound, based upon a supposed case not then before the jury. The third instruction was substantially given. But its phraseology was altered very properly by the court. For if it had been given, it would have excluded the deeds of the defendants derived through Ly nch from Elizabeth Innis, and have declared that they furnished no evidence that the defendants were possessed by her consent, after the date of these deeds. They had before been decided admissible, and their legal operation well explained to the jury. The court, therefore, inconsistency with its former opinions, modified the proposition by instructing the jury, that there was no evidence conducing to shew the permission, licence or assent of Mrs. Innis to the defendants, who claimed as purchasers under Lynch, to enter or hold, at any time previous to the dates of their respective deeds. This was going as far in favor of the plaintiff’s motion, as the court could with propriety.
Upon the whole case, then, and in every point, we con *104 ceive there is no error in the record; and the judgment which was given for the defendants below, must be affirmed with costs.
Bibb for appellant, Hardin and Pope contra.