Judge lírcrioí.As
Jpb'vrrerl the opinion of the Court.
Chief Justice Robertson did not sit.
This was an action instituted in 1825, by Clarice against Baker, for the Trover and conversion of slaves. On the trial of the general issue the plaintiff proved that in 1813 theslaves were sohjj conveyed, and delivered to him by Martin Baker; that he had held possession of them from that time ti l 1825, when thev secretly left him, or were car-3’ied off in the night, and a few days afterwards were found in the possession of the defendant, who refused to deliver them up. The defendant then shewed that Martin Baker, in 1817, by an answer in the nature of a cross hill against Clark and others, in a suit then pending in the Garrard circuit court, prayed and sought a recision of the contract of sale of sai 1 slaves, and to have them redelivered because of alledged fraud and imposition on the part of Clarke, in their obtention; that Martin Baker diecl in 1823; *195 -that said bill was regularly continued until 1826, when it was revived in the name of the defendant, as administrator of said Martin, and that it was now pending; that the defendant had administered on the estate of said Martin. He also introduced witnesses whose testimony conduced to shew, that at the time of making the sale to Clerke, Martin Baker was of unsound mind, and that plaintiff had taken advantage' of his weakness, to procure a sale of the slaves at an inadequate price. Upon this testimony the plaintiff moved the court to instruct the Jury:—
“1st. That a party remaining in the adverse possession of slaves for five years, thereby becomes invested, in virtue of the statute of limitations, with such a right as to enable him to recover them of the former owner, who may afterwards have obtained the possession wrongfully,
2d. That the pendency of a suit in chancery between the same parties, about the same slaves, will not protect such former owner wrongly obtaining the possession against the operation of the statute of limitations, in action at law, brought by the party from whom tiiey are taUen or withheld.
3d. That a party, who, during the pendency of a suit brought by him to recover the possession of slaves, takes said slaves from the possession of his adversary, without his consent, is a wrong doer.”
The court refused to give either of these instructions, and for so refusing, assigned for reasons, to the counsel and jury, that, “as Martin Baker had by hi? bill asserted title to the slaves before they had been five years in the possession of plaintiff, the-case was not within the reasons of any opinion of the appellate court, in the cases to which the-court had been referred, the possesion of the plaintiff Ciar .e having been disturbed by the suit in chancery.” For refusing to give said instruction? the plaintiff excepted. Verdict and judgment were rendered for the defendant. The plaintiff then moved the court for a new trial, because the verdict was contrary to law and evidence, and because the court erred in its instructions to the jury. The .court overruled the motion’®®!- a new trial, and *196 Clarke has appealed to this court, and assigns for error the refusal to give the instructions asked, and the overruling his motion for a new trial.
Plea of “good retfu,_ .uea o .
Before entering upon an investigation of the errors assigned in behalf of Clarke, we are met by a preliminary objection on the part of the defendant, Ba-¿er. It is thisv in addition to the'plea of not guiityT Baker filed another plea, in which, after setting forth the filing of Martin Baker’s cross hill, its pendency and subsequent revivor in his name, as his administrator; he says “that said Martin - had good title to said slaves, and defendant as his administrator, in which character he holds them, has a right to the possession and disposition thereof, and further avers, that the suit in chancery is still pending, &c.” To this-plea the plaintiff demurred, and the court sustained his demurrer. It is now insisted that this jilea is good — presents a substantial bar to the action, and that the court, judging upon the whole record, must fender a judgment of affirmance without regard to any errors which may have intervened to the jirejudice of Clarke. The plea could scarcely have been drafted with a view to present the issue which it is now contended to embrace; nor does it contain a sufficiency of either form or substance to subserve the purjjose to which it is attemjited to apply it. Waiving all excejition to the loose and unusual dress in which it is supposed to assert jiroprietorship of the slaves in Martin Baker or the defendant, it does not aver when Martin had “good title,” how long it subsisted, nor that he retained it at the time of his death, and though it asserts that the defendant has the right to their possession and disposition, it does not affirm that he liad such right at the institution of the suit. A state of case may well.be imagined which would allow all the allegations of the plea to be true, and still leave a right of action in the jilaintiff. As suppose a mortgage from Martin to the jilaintiff; a seizure and conversion of the slaves by the defendant, and after institution of the suit a jiayment of the mortgage by the defendant. This reinvestiture of the title in the defendant, after suit brought, woul-^not destroy the plaintiff’s right of action, existing at the time of its institution. This *197 construction of the plea may be deemed critically severe and exact. Be it so. Every plea which is attempted to be used for a similar purpose, should be made to undergo a similar test. Besides, we think there was great force in the objection urged at the bar, that the plea, if good at all, amounts only to the general issue, and therefore should receive no further consideration than if it were a second plea of not guilty, which the plaintiff had failed to notice. Having disposed of this objection, we shall proceed to consider the questions presented by the assignment of errors.
The court may instruct thejury with* our being moved so to do, but i* is noi bound to instruct unless requested so to do.
t When instructtions to the jury are requested of the court, it is bound to necidu u- on them in the form ii* which' they are draughted and presented o the court, but it is not ' ound to mould Ihrm into the proper form. General rule is that the couttshould not give in* structionson mere abstract points of law*
The first is whether the court should have given the instructions as asked by the plaintiff.
The propriety of giving the third instruction asked for was waived- in argument, and the two first only insisted on. To those two on the one hand it is objected, that they were merely abstract propositions of law, not applied to, nor comprehending all the facts or aspects of the case, whilst, on the other, it is contended that they embrace legal points applicable and pertinent to- the facts and issue, and that if they needed qualification, the qualification should have been made by the court, or by instructions which should have been ashed by the adverse party. It has long been settled, that the court may instruct the jury without being moved so to do, but it is not bound to do it. It need only decide upon the instructions as asked, and is under no obligation to mould them into proper form. The general rule is that the court should not give instructions on mere abstract points of law. In determining what is or is not an abstract proposition the cases savour no litlte of an undue degree of nicety. It would seem that every proposition is deemed abstract, however pertinent or applicable it may be, unless it be made to apply in expiess terms, cither to the attitude of the -parties or the very facts in issue. See Hamilton vs. Russell, I. Cranch, 309—Metcalfe vs. Cowen, Litt. Select Cas. 370. Tested by this rule alone, the instructions were properly refused. They are obnoxious to a still stronger objection. They do not embrace all the aspects of the proof. They are not *198 hypothecated on the condition that the jury should disbelieve the proof as to Martin Baker being of unsound mind. Without such a reservation they were calculated to mislead the jury into the belief, that five years adverse possession would vest the title in the plaintiff, whether he was of unsound mind or not.—Bowman vs. Bartlett, 3 Mar. 97.
An mstruo tion, however pertinent or applicable it may be, is abs'ract unless it be made to apply, in express terms, either t» the attitude of the parties, or the very facts in issue.
The next question is, did the court err in refusing to grant a new trial? This mainly depends upon another. Did it misdirect the jury?
it is contended in the first place that the record does not shew any instruction to the jury such as is complained of, that there was no instruction given. There is no fair ground for this position. 'Ihe bill of exception states, that the court, in giving its reasons to the jury, for refusing the instructions asked by plaintiff, told them, that the possession of Claj ke was disturbed by the suit in chancery. This, though not in terms, a declaration that the suit in chancery suspended the operation of the statute of limitations; yet, when taken in connection with the circumstances, was tantamount thereto, and equally well-calculated to impress the jury with the idea that it did. How could the jury understand that Chvke’s possession was disturbed, unless it was changed from its adverse character into an amicable possession, or that it stopped the statute from running in its favor? We must consider the court as having so instructed, and test the case accordingly.
It is urged that conceding this point, the instruction was still proper. That the statute of limitations takes away no right, but only bars the remedy. That it only confers the right of property on an adverse possession, where the íemedy is gone. That the pendency of the chancery suit preserved the remedy in full life, and with it the right. That whilst the right remained, the right of recaption continued. That during the continuance of the right the statute barred an action, but did not inhibit a self redress by recaption; that in analogy to the continual claim to land, the chancery suit was a continual claim which saved the right against the run-ring of the statute. It must be conceded, that this *199 argument, however novel it may he, is plausible and most ihirenions. We can accord to it no further merit. It-s fallacy principally consists in assimilating the operation of the '-hanrerv suit, to that of continual rlaim, to which it hears no perfect resemblance, an<l the confounding of an obvious distinction between the preservation of the remedy in the very suit, for the mere purposes of that suit, and the preservation of the remedy generally.
Uninterrupted adverse possession for five vears carries with it so =tronglv the idea of a matured right,that the circuit court, in conveying its opinion to the jury as to the effect of the nendencv of the chancery suit, said that it disturbed Clarke’s possession. This was not contended for in argument here, hut it was merely ind-ded that it preserved the remedy. Now, eo: tinned claim does actually disturh the possession; it severs its continuity and breaks it into disunited links. Continued claim preserved the right of entry, hv making an attempt to enter, which the common law construed into an actual entry, from the hich estimation in which it held the realty, and its disposition to preserve a right to it. It was also a species of remedy, a sort of self redress that kept the right alive, hut like other remedies, it kept it alive onlv for the purpose of effectuation by its own means' and if not carried out to final fruition it served no purpose, and did not change the relative attitude of the parties. The law not holding the personalty in the same estimation, allowed no continued claim to a chattle. nor does it authorize any proceeding analagous to it. But suppose it did — a suit for a chattle would then, only bear the same analogv to continued claim to it, that a suit for land would bear to continued claim for the land. Would then a suit for land brought before the lapse of twenty vears. and still ending after it, preserve the remedy or the riobt? It has been determined that it would not. Former decisions of this court have settled, that, even where therp has been a judgment of eviction in favor of the plaintiff, and he fails to obtain possession under it before the expiration of the mise, his right of entry is not saved. This was admitted in argument, and it was conceded, that *200 the pendency of ejectment for land, would not preserve the remedy in the manner contended for in the case of a chattle. It was insisted that there was not a perfect analogy between the two class of cases, because the law did not allow a recaption of land. This is true in the letter but not in substance. It allows a peaceable retaking of the possession-of land, which as a self redress is entirely similar to the right of recaption as to chatties. It is alsoinsisted that the analogy between the cases fails, because as to land there is a higher remedy given. Let us test this distinction. Suppose a writ of right brought before twenty years adverse possession, and still pending after the lapse of thirty years, could the demandant, by a peaceable entry after thirty years, defeat the operation of the statute in maturing adverse possession of the tenant into an absolute.fight? Would the mere pendency of the suit cause his entry to have relation back to the time of the institution of the suit and reinvest him with the right of property as he then had it, and which otherwise would have 'become extinct? We presume this would not be contended for b.y any one. If so, it is difficult to discern any want of analogy between the two class of cases. The same law must govern both.
yive y6UfS sulv ree uni — ’ itpr upted possession of the ..o-sessor *witli so per-that he con recover them fro H ihe formor owner .who may have obtained possession oí .folly! Wr0tlS"
Suppose A sues B for a slave before the lapse of five years, and after the five years brings another su¡t for the same slave, the first still pending, that B waives his plea, in abatement, and pleads the statute of limitations, A could not avoid it. by replying ^ie pendency of the former suit. Is not this because the institution and continuing pendency of the former suit does not preserve, the remedy .except for the purposes of tlit very suit ?
Let us test this hovel invention, by á practical app]ication of -its principles. Let us apply them to the facts in this cause. Martin Baker died in 1823; the-chancery suit was not revived till 1826. Where was this right of recaption from the time of his death till that of reviving the suit? Was it in nubibus, or was it slumbering with the suit on the chancery •docket? After his death, the suit was defunct also, find if the process of revivor had not been applied *201 Loit, would have remained so, till the “crack of doom.” it was itself in a state of exanimate torpor; it -v is utterlv incapable of communicating vitality to any .tiling ebe; yet its actual pendency, according to tile argument, is the very lite principle to this assumed right of recaption. The recaption -took pl n-e, and this suit was brought in 1825, many months before the revivor. According to the reasoning which bases the right of recaption on the pendency of that suit,-the right did not exist at the iastitutio i of this suit. Clarke’s right to recover, .then, by force of his adversary possession was absolute at the institution-of Ids suit. Could this right be. divested; could it be uttrrly abrogated by the subsequent revivor? It cannot be seriously so contended, What then,.must we permit Clarke to progress to final judgment .in this suit, upon his perfect right, as it existed at the commencement, and then, permit to aker to -turn round, sue, and recover from him, upon a principle of post limini operating upon the revivor of the chancery suit? We cannot be led into the entanglement of such .absurdity.
of linii.atioi'sSs tio-sofour code’
Why make this interpolation -on the statute -of limitations? I« it for the preservation of any essential right, not falling within its mischief? blot so. If the chancery suit ever was, or could be made effectual, Ba ,.er’s road to redress is still open and plain. He does not necessarily require the aid of this new invention. Or, are we .to do this for the wise purpose of .encouraging a litigant to scramble for the possession of property, after he' lias brought suit for it, and placed it as it were in the custody of the law.
The statute of limitations is viewed by all as one of the wisest enactions of our code: we shall not easily he induced to countenance any new device for its evasion. ’
We forbear to prolong the discussion. We may be liable to the censure of having dwelt more upon i,t than the intrinsic merit or difficulty of the point would seem to deserve. Our apology must be found in the great steal and apparent confidence with which *202 it lias been urged upon us, and the talents and high professional standing of those who urged it.
Hoggin, Talbot, and Wickliffe, for plaintiff; Crittenden and Brown, for defendant.
Wherefore, the judgment is reversed, and the cause remanded, with directions to set aside the verdict, grant a new trial, and for further proceedings consistent with this opinion. The appellants must recover their costs.